IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MEACO FOLK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASSOCIATES ASSET RECOVERY, LLC and TAMMY REASON,<br><br>Defendants. | Civil Action No.<br><br>_____<br><br>Jury Trial Demanded |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Meaco Folk ("Folk"), individually and on behalf of all others similarly situated who consent to their inclusion in a collective action, brings this Complaint against Defendants Associates Asset Recovery, LLC ("AAR") and Tammy Reason ("Reason") (collectively "Defendants") and shows the Court as follows:

### *Introduction*

1.

This is a wage and hour case.

2.

AAR runs a repossession business for lenders who extend loans to consumers secured by an automobile.

3.

AAR employed Plaintiff and the collective he seeks to certify as drivers and spotters.

4.

AAR violated the FLSA by routinely truncating records of employees' work hours and failing to properly pay minimum and overtime wages.

5.

Plaintiff asks this Court to certify a collective of similarly situated employees ("the Proposed Collective") as follows:

> All persons Associates Asset employed as tow truck drivers and spotters during the Relevant Time Period (*i.e.* the three years immediately preceding the initiation of this action) who were paid on a commission-only basis.

6.

Folk requests relief for the Proposed Collective because the members of the Proposed Collective are similarly situated to Folk and each other in that they were all improperly paid under a common scheme of truncating hours to avoid paying minimum and/or overtime compensation required by the FLSA.

7.

Folk's Consent to Serve as a Plaintiff Representative in this FLSA action is attached as Exhibit "A".

### *Jurisdiction and Venue*

8.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C. § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

9.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims herein arose in this judicial district.

### *The Parties*

10.

Folk resides in Gwinnett County, Georgia.

11.

AAR describes itself as a transportation and warehousing company.

12.

AAR is a foreign limited liability company organized under the laws of the State of South Carolina.

13.

Throughout the Relevant Time Period, AAR operated its business in the State of Georgia in a manner related to the allegations of this Complaint.

14.

Throughout the Relevant Time Period, AAR maintained a principal office address at 3116 US Hwy 41 South, Tifton, Georgia 31794.

15.

Throughout the Relevant Time Period, AAR maintained operations five (5) Georgia locations i.e., Tifton, Milledgeville, Columbus, Conyers, and Douglasville, Georgia.

16.

AAR is subject to the personal jurisdiction of this Court.

17.

AAR can be served via its registered agent Tony Cooper located at 3116 US Hwy 41 South, Tifton, Georgia 31794.

18.

Reason is a resident of South Carolina.

19.

Reason is subject to the personal jurisdiction of this Court.

20.

Reason is a manager, owner and/or operator of AAR.

21.

Reason may be served with process at her residence located at 3601 E Palmetto Street, Florence, South Carolina 29506 or wherever she can be found.

### *Individual Coverage*

22.

During the Relevant Period, Folk and similarly situated employees were "engaged in commerce" as employees of AAR as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

### *Enterprise Coverage*

23.

At all times material hereto, AAR has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

24.

At all times material hereto, two or more employees of AAR, including Folk and the members of the Proposed Collective, used or handled the following items that moved in interstate commerce that are necessary for performing its commercial

purpose: computers, office supplies, office furniture, trucks, tools, gasoline, engine oil, and cellular phones.

25.

In 2021, AAR had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

26.

In 2022, AAR had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

27.

In 2023, AAR had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

28.

In 2024, AAR had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

29.

During 2021, AAR had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

30.

During 2022, AAR had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

31.

During 2023, AAR had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

32.

During 2024, AAR had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

33.

During 2020, AAR had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

34.

During 2021, AAR had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

35.

During 2022, AAR had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

During 2023, AAR had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

During 2024, AAR had or is expected to have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

38.

At all times material hereto, AAR has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

***Statutory Employer***

39.

Throughout the Relevant Time Period, Reason was an owner and/or operator of Associates Asset.

40.

Throughout the Relevant Time Period, Reason exercised operational control over Folk's work activities.

41.

Throughout the Relevant Time Period, Reason was involved in the day-to-day operation of the AAR.

42.

Throughout the Relevant Time Period, AAR vested Reason with supervisory authority over Folk.

43.

Throughout the period from April 1, 2023 through May 15, 2024, Reason exercised supervisory authority over Folk.

44.

Throughout the period from April 1, 2023 through May 15, 2024, Reason scheduled Folk's working hours or supervised the scheduling of Folk's working hours.

45.

Throughout the Relevant Time Period, Reason had authority to set or change Folk's working hours on behalf of AAR.

46.

Throughout the period from April 1, 2023 through May 15, 2024, Reason exercised authority and supervision over Folk's compensation.

47.

Throughout the Relevant Time Period, Reason had authority to modify or change Folk's compensation on behalf of AAR.

48.

Throughout the Relevant Time Period, Folk contacted Reason if there were issues with the truck he was operating on behalf of AAR such as tires or repairs needed.

## COMMON FACTUAL ALLEGATIONS

### (a) Folk and the members of the Proposed Collective are FLSA employees of Associates Asset

49.

Throughout the Relevant Time Period, Folk and the members of the Proposed Collective worked at or from AAR Georgia locations.

50.

Throughout the Relevant Time Period, AAR exercised control over the time during which Folk and members of the Proposed Collective worked.

51.

Throughout the Relevant Time Period, AAR exercised control over the work schedules of Folk and the members of the Proposed Collective.

52.

Throughout the Relevant Time Period, AAR exercised control over the manner and method in which Folk and the members of the Proposed Collective were compensated.

53.

Throughout the Relevant Time Period, AAR exercised control over the manner in which Folk and members of the Proposed Collective worked.

54.

Throughout the Relevant Time Period, AAR exercised control over the methods Folk and members of the Proposed Collective employed while working.

55.

Throughout the Relevant Time Period, Folk and the members of the Proposed Collective worked for AAR on a regular and consistent basis.

56.

Throughout the Relevant Time Period, AAR treated Folk and the members of the Proposed Collective as employees.

57.

Throughout the Relevant Time Period, Folk and the members of the Proposed Collective performed work for AAR and its customers.

58.

Throughout the Relevant Time Period, AAR provided Folk and the members of the Proposed Collective with all materials and equipment necessary to perform the work they were hired to perform.

59.

Throughout the Relevant Time Period, the work that Folk and the members of the Proposed Collective performed did not require a skill certification or institutional training.

60.

Throughout the Relevant Time Period, Associates Asset was an "employer" of Folk and the members of the Proposed Collective within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

61.

At all times material hereto Folk and the members of the Proposed Collective were "employees" of Associates Asset as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

**(b) Folk and the members of the Proposed Collective are not exempt from the FLSA's Minimum Wage or Maximum Hours requirements.**

62.

At all times in the Relevant Time Period, Defendants compensated Folk and the members of the Proposed Collective on a commission only basis for work they performed on behalf of Defendants as spotters and tow truck drivers.

63.

At all times material hereto, Folk and the members of the Proposed Collective were not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

64.

At all times material hereto, Folk and the members of the Proposed Collective were not exempt from the maximum hours requirements of the FLSA by reason of any exemption.

65.

At all times material hereto, Defendants did not employ Folk or the members of the Proposed Collective in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

66.

At all times material hereto, Defendants did not employ Folk or the members of the Proposed Collective Proposed Collective in bona fide executive capacity within the meaning of 29 USC § 213 (a).

67.

At all times material hereto, Defendants did not employ Folk or the members of the Proposed Collective in the capacity of an "outside salesman" so as to be exempt from the overtime premium pay requirements of 29 USC § 207 (a).

68.

Throughout the Relevant Time Period, neither Folk nor the members of the Proposed Collective supervised two or more employees.

69.

Folk and the members of the Proposed Collective are not exempt from the overtime premium pay requirements of the FLSA by reason of any exemption during the Relevant Time Period.

70.

Throughout the Relevant Time Period, Folk and the members of the Proposed Collective were not exempt from the maximum hour requirements of the FLSA because of the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1).

71.

Throughout the Relevant Time Period, Folk and the members of the Proposed Collective work for Defendants did not involve interstate commerce within the meaning of the Motor Carrier Act, 49 U.S.C.A. § 10521.

72.

Throughout the Relevant Time Period, Folk and the members of the Proposed Collective normally operated a snatch tow truck in their performance of work on behalf of Defendants.

73.

Throughout the Relevant Time Period, Folk did not travel outside of the State of Georgia in the performance of his regular work activities on behalf of Defendants.

74.

At all times material hereto, Folk and the members of the Proposed Collective did not operate "commercial motor vehicle[s]" within the meaning of the Motor Carrier Act, 49 U.S.C.A. § 31132(1).

**(c) Defendants Failed to Pay Folk and the Proposed Collective for All Hours Worked, including Overtime**

75.

Throughout the Relevant Time Period, Folk and the members of the Proposed Collective regularly worked more than forty hours per work week for Defendants.

76.

Throughout the Relevant Timer Period, Defendants maintained and followed a policy and practice of truncating records of the actual hours worked by Folk and the members of the Proposed Collective.

77.

Throughout the Relevant Timer Period, Defendants maintained and followed a policy and practice of requiring drivers to work a mandatory forty-five (45) hours in their tow trucks each work week.

78.

Throughout the Relevant Timer Period, Defendants maintained and followed a policy and practice of not paying Folk and the members of the Proposed Collective overtime compensation.

79.

Throughout the Relevant Time Period, Defendants regularly and systematically truncated the time worked by Folk and members of the Proposed Collective so as to deny them pay for all hours worked.

80.

Throughout the Relevant Time Period, Defendants was aware of the actual number of hours that Folk and the Proposed Collective worked during each work week.

81.

Throughout the Relevant Time Period, Defendants knew or should have known that the FLSA applied to Folk and the Proposed Collective.

82.

Section 6 of the FLSA (29 U.S.C. § 206) requires that Defendants compensate Folk and the Proposed Collective at a rate of no less than $7.25 per hour for every hour worked in a work week.

83.

Defendants knew or should have known that Section 6 of the FLSA requires that Defendants compensate Folk and the Proposed Collective at a rate of at least $7.25 per hour for every hour worked in a work week.

84.

During the Relevant Time Period Defendants made improper deductions for "purchases" and other non-specified reasons from Folk's compensation, and failed to compensate him at a rate of $7.25 per hour for each hour he worked.

85.

During the Relevant Period, AAR failed to compensate Folk and the Proposed Collective at a rate of $7.25 per hour for each hour worked.

86.

Defendants knew or should have known that Section 7 of the FLSA requires that Defendants compensate Folk and the Proposed Collective a premium for all hours worked above forty in a given workweek.

87.

29 C.F.R. § 778.118 sets forth the manner for calculating overtime wages to employees who receive a portion of their earnings in commission each week.

88.

29 C.F.R. § 778.118 requires that the sum total of the commission earned and other earnings be divided by the total hours worked in order to determine the regular hourly rate.

89.

Throughout the Relevant Time Period, Defendants failed to calculate a regular rate for Folk and the Proposed Collective by dividing the sum total of the commissions they earned and other earnings by the total hours they worked.

90.

29 C.F.R. § 778.118 further requires that "(t)he employee must be paid extra compensation at one-half that rate for each hour worked in excess of" forty hours per week.

91.

During the Relevant Period, Associates Asset willfully failed to compensate Folk and the Proposed Collective at a rate of $7.25 per hour for each hour they worked.

92.

During the Relevant Period, Folk and the Proposed Collective worked for Defendants more than forty (40) hours per week.

93.

Section 7 of the FLSA, 29 U.S.C. § 207, requires that Defendants compensate Folk and the Proposed Collective at a rate of one–and–one–half times their regular hourly rates for all time worked in excess of forty (40) hours in a work week.

94.

Throughout the Relevant Period, Defendants failed to pay Folk and the members of the Proposed Collective at one-and-one-half times their regular hourly rates for all work performed in excess of forty (40) hours per week.

95.

Throughout the Relevant Period, Defendants willfully failed to pay Folk and the members of the Proposed Collective at one-and-one-half times their regular hourly rates for all work performed in excess of forty (40) hours per week.

**ADDITIONAL FACTUAL ALLEGATIONS AS TO FOLK**

96.

Folk worked for AAR from approximately April 1, 2023 through May 15, 2024.

97.

Defendants initially employed Folk as a spotter from approximately April 1, 2023 through May 2023.

98.

As a spotter, Folk drove a Nissan Pathfinder that was owned or leased by or on behalf of AAR and was equipped with cameras.

99.

As a spotter, Folk located vehicles that AAR had identified subject to repossession, took photos, and then contacted AAR tow truck drivers who in turn would collect these vehicles for Defendants.

100.

From approximately April 1, 2023 through May 2023, Defendants compensated Folk at a rate of $0.01 per scan for each vehicle he located plus $15.00 per vehicle that AAR tow truck drivers successfully repossessed.

101.

From approximately April 1, 2023 through May 2023, Folk regularly worked approximately 40-70 hours per week as a spotter on behalf of Defendants.

102.

From approximately June 2023 through May 15, 2024, Defendants employed Folk as a tow truck driver.

103.

From approximately June 2023 through May 15, 2024, Folk towed vehicles AAR had identified subject to repossession.

104.

From approximately June 2023 through May 15, 2024, Folk worked for AAR from its Douglasville and Conyers, Georgia locations.

105.

Throughout the Relevant Time Period, Defendants compensated Folk on a commission-only basis for the work he performed as a tow truck driver.

106.

From approximately June 2023 through May 15, 2024, Defendants compensated Folk at varying rates for each vehicle he located that was successfully repossessed.

107.

Throughout the Relevant Time Period, Defendants compensated Folk a commission of $60 for each of the first 8 vehicles he repossessed in a work week, $70 for each of the next 9 to 16 vehicles he repossessed, $80 for each of the next 17 to 24 vehicles he repossessed, and $90 for each vehicle he repossessed thereafter.

108.

From June 2023 through May 15, 2024, Folk regularly worked seven (7) days per week.

109.

From June 2023 through October 2023, Folk regularly worked 60-70 hours per week when performing tow truck duties on behalf of Defendants.

110.

In or about November 2023, the tow truck assigned to Folk by Defendants required maintenance and was out of operation for approximately two (2) months.

111.

From November 2023 through approximately late-January 2024, Folk worked at AAR's Conyers office while his tow truck was being repaired.

112.

From November 2023 through approximately late-January 2024, the duties Folk performed at AAR's Conyers office included, but were not limited to, security, cleaning cars, checking in transporters and confirming they received the correct vehicles, and moving cars around the lot.

113.

From November 2023 through approximately late-January 2024, Folk worked approximately 40 hours per week for Defendants at AAR's Conyers office.

114.

From November 2023 through approximately late-January 2024, Defendants compensated Folk at a rate of $15.00 per hour for the office work he performed at Associates Asset's Conyers office.

115.

From approximately late-January 2024 through March 2024, Folk worked approximately 40 hours per week at AAR's Conyers, Georgia office and at least an additional 45 hours per week operating Defendants' tow truck.

116.

From approximately late-January 2024 through March 2024, Folk worked approximately 85-90 hours per week performing both his tow truck duties and office duties on behalf of Defendants.

117.

From approximately April 2024 through May 15, 2024, Folk worked approximately 20 hours per week for Defendants at AAR's Conyers, Georgia office and at least an additional 45 hours per week operating Defendant's tow truck.

118.

From approximately April 2024 through May 15, 2024, Folk worked approximately 65-70 hours per week performing both his tow truck duties and office duties on behalf of Defendants.

119.

For approximately the first three to four months of his employment, Defendants required Folk to clock-in and clock-out for each work shift by entering the last five digits of his social security numbers into an AAR computer program.

120.

From approximately August 2023 through May 15, 2024, Associates Asset's Lot Manager "Dominique" notated when Folk began and finished work each day and emailed his total hours at the end of each week to Defendant's Georgia Lot Manager "Michelle" who then provided the total hours to payroll.

121.

Throughout the Relevant Time Period, Folk worked for Defendants on a consistent and full-time basis.

122.

Throughout the Relevant Time Period, Defendants knew or should have known that the FLSA applied to Folk.

123.

Throughout the Relevant Timer Period, Defendants truncated the actual hours worked by Folk.

124.

During the Relevant Period, Associates Asset failed to compensate Folk at a rate of $7.25 per hour for each hour he worked.

125.

Throughout the Relevant Timer Period, Defendants compensated Folk only up to 40 hours per week.

126.

Throughout the Relevant Timer Period, Defendants failed to compensate Folk for any hours he worked in excess of 40 hours per week.

127.

Throughout the Relevant Period, Defendants failed to pay Folk at one-and-one-half times his regular hourly rate for all work performed in excess of forty (40) hours per week.

**COUNT I — FAILURE TO PAY MINIMUM WAGE**

128.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

129.

At all times material hereto, Folk and the members of the Proposed Collective have been employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

130.

Throughout the Relevant Time Period, Defendants regularly and systematically truncated its records of the time worked by Folk and members of the Proposed Collective so as to deny them pay for all hours worked

131.

At all times material hereto, Defendants made deductions for "purchases" and other non-specified reasons from its compensation of Folk and the members of the Proposed Collective.

132.

Throughout the Relevant Time Period, Defendants truncation of the actual hours Folk and the members of the Proposed Collective worked and deductions Defendants made from their compensation caused their respective wages to fall below the minimum wage as established in accordance with Section 6 of the FLSA.

133.

Throughout the Relevant Period, Defendants failed to compensate Folk and the members of the Proposed Collective at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

134.

Throughout the Relevant Period, Defendants willfully failed to compensate Folk and the members of the Proposed Collective at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

135.

As a result of the underpayment of minimum wages as alleged above, Folk and the members of the Proposed Collective are entitled to payment of minimum

wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

### 136.

As a result of the underpayment of minimum wages as alleged above, Folk and the members of the Proposed Collective are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b), declaratory and injunctive relief, and reimbursement of reasonable attorneys' fees and expenses of litigation, pursuant to 29 U.S.C. § 216(b).

## COUNT II — FAILURE TO PAY OVERTIME

### 137.

The allegations in paragraphs 1 through 127 above are incorporated by reference herein as if set forth verbatim.

### 138.

At all times material hereto, Folk and the members of the Proposed Collective were employees covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

### 139.

Throughout the Relevant Time Period, Folk and the members of the Proposed Collective regularly worked in Associates Asset's employ in excess of forty (40) hours during each work week.

140.

Throughout the Relevant Time Period, Defendants failed to pay Folk and the members of the Proposed Collective at one–and–one–half times their regular rates for all time worked in excess of forty (40) hours during each work week.

141.

Throughout the Relevant Time Period, Defendants willfully failed to pay Folk and the members of the Proposed Collective at one–and–one–half times their regular rates for all time worked in excess of forty (40) hours during each work week.

142.

As a result of the failure to pay overtime compensation as alleged above, Folk and the members of the Proposed Collective are entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

143.

As a result of the willful failure to pay overtime compensation as alleged above, Folk and the members of the Proposed Collective are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

144.

As a result of the failure to pay overtime compensation as alleged above, Folk and the members of the Proposed Collective are entitled to their costs of litigation,

including their reasonable attorneys' fees, in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT III – COLLECTIVE ACTION ALLEGATIONS

### 145.

The allegations in paragraphs 1 through 127 above are incorporated by reference herein as if set forth verbatim.

### 146.

At all times during the three years prior to the filing of this Complaint, Defendants violated 29 U.S.C. § 206 and 29 U.S.C. § 207 by failing to pay minimum wage and overtime wages to the members of the collective Folk seeks to represent.

### 147.

At all times during the three years prior to the filing of this Complaint, Defendants have violated 29 U.S.C. § 206 and 29 U.S.C. § 207 by failing to pay minimum wage and overtime wages to the members of the collective Folk seeks to represent in the same manner as alleged above with respect to Folk.

### 148.

All tow truck drivers and spotters who have worked for Defendants within the three years prior to the filing of this action are "similarly situated" within the meaning of FLSA § 16 (b), 29 U.S.C. § 216(b).

149.

Defendants are liable pursuant to 29 U.S.C. § 201 *et seq*. to all individuals similarly situated to Folk for unpaid minimum wage, overtime wages, attorney's fees and costs of litigation, and other such equitable and legal relief that this Court finds proper.

150.

The proposed collective of individuals similarly situated to Folk should be defined as "All persons Associates Asset employed as tow truck drivers and spotters during the Relevant Time Period (*i.e.* the three years immediately preceding the initiation of this action) who were paid on a commission-only basis."

151.

All such individuals similarly situated to Folk would benefit from the issuance of a Court supervised Notice of Present Lawsuit and opportunity to consent in writing to their inclusion as plaintiffs in this lawsuit pursuant to 29 U.S.C. § 216(b).

152.

All such individuals similarly situated to Folk are known to Defendants, are readily identifiable, and can be located through the records of Defendants.

**WHEREFORE**, Folk respectfully prays that the Court:

a)    Take jurisdiction of this matter;

b)    Certify the collective and permit this case to proceed as an FLSA collective action under 29 U.S.C. § 216(b) for those employees, past or present, who opt to participate by filing proper written notice with the Court;

c)    Issue an Order holding Associates Asset to be an "employer" as that term is defined under the FLSA;

d)    Issue an Order holding Tammy Reason to be an "employer" as that term is defined under the FLSA;

e)    Grant a trial by jury as to all matters properly triable to a jury;

f)    Issue a judgment declaring that Folk and the collective they represent were covered by the provisions of the FLSA and that Defendants have failed to comply with the requirements of the FLSA;

g)    Award Folk due but unpaid minimum wages under the FLSA, plus additional like amounts in liquidated against Defendants, jointly and severally;

h)    Award each member of the Proposed Collective proper payment for due but unpaid minimum wages under the FLSA, plus additional like amounts in liquidated against Defendants, jointly and severally;

i)      Award Folk proper payment for each overtime hour worked in the three years preceding the filing of this Complaint, calculated at one and one-half times the regular rate, and liquidated damages equaling 100% of overtime due as required by the FLSA;

j)      Award each member of the Proposed Collective proper payment for each overtime hour worked in the three years preceding each class member's joining of this collective action, calculated at one and one-half times the regular rate, and liquidated damages equaling 100% of overtime due each class member Plaintiff, as required by the FLSA;

k)      Award Folk and each member of the collective nominal damages;

l)      Award each Folk and each member of the collective their reasonable attorneys' fees and costs of litigation; and

m)     Award any such other further relief this Court deems just, equitable and proper.

Respectfully submitted,

**DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

101 Marietta Street
Suite 2650
Atlanta, Georgia 30303
(404) 979-3150
(404) 979-3170 (f)
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com

*/s/Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Ga Bar No. 262375
*/s/Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791

**Counsel for Folk and the Proposed Collective**